## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

DAVID LAMARR LOVE,        )
                                  )
            Plaintiff,       )
                                  )
v.                           )          CV420-083
                                  )
INSPECTOR MICHAEL      )
MORALES and JOHN DOE,    )
                                  )
           Defendants.    )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, appearing *pro se*, filed this lawsuit purportedly under 42 U.S.C. § 1983 alleging various constitutional violations against federal law enforcement officers, a claim properly analyzed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* doc. 1; *see also* doc. 7 at 4 (construing Plaintiff's claims as proceeding pursuant to *Bivens*). Plaintiff filed an Amended Complaint, which superseded the original Complaint, and the Court screened it under 28 U.S.C. § 1915(a)(1). *See* doc. 7. Although some claims and Defendants were dismissed upon screening, the Court approved claims against Defendant Morales for service, *id*. at 6-8. The Court also directed Plaintiff to "obtain the name of [the John Doe] defendant using the tools

of discovery," and to seek leave to file an Amended Complaint to include that name, *id.* at 4-5.   Defendant Morales was served, doc. 16, and he filed a Motion to Dismiss, doc 20, and a Motion to Stay, doc. 21.   The Plaintiff responded with a "Motion to Dismiss Defendant's Motion to Stay Discovery and Motion to Dismiss," doc. 22, which the Court construes as Plaintiff's Response to both motions.   Thus, the motion is ripe for disposition.   Additionally, Plaintiff has not sought leave to amend his Complaint to identify the still-unknown John Doe defendant.   *See generally* docket.

In his Amended Complaint and attached Affidavit, Plaintiff alleges that Defendants Morales, who is an officer with the Federal Protective Service, and John Doe, an "Unknown Federal Protective Service Security Officer," conspired to interfere with his disability hearing and wrongfully detained him at the office of the Social Security Administration in Savannah, Georgia on April 25, 2018.   *See generally* docs. 4 & 5.   He claims that upon entering the building where the hearing was to be held, John Doe questioned Plaintiff's tribal identification documents which Plaintiff had presented instead of state-issued identification.   Doc. 5 at 4. The guard contacted Defendant Morales, who then interrupted Plaintiff's

disability hearing to accuse Plaintiff of committing crimes, which resulted in a continuance of the hearing. *Id.* at 7-8. Defendant Morales used racist language towards Plaintiff and held him against his will while questioning him about the identification. *Id.* at 7. Plaintiff also contends that Defendant Morales kept his tribal identification document following that detention, but after an investigation eventually returned it. Doc. 5 at 7. Based on these allegations, Plaintiff raises claims for damages under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Doc. 4 at 5.

Defendant argues that Plaintiff fails to state a claim because his allegations do not fall within any established *Bivens* context, and the court should not recognize a new one. *See* doc. 20 at 4. Plaintiff's Response to the Motion to Dismiss asserts claims of false accusations and false investigation, and he appears to claim some Defendant defaulted on some illusive contractual obligation. Doc. 22 at 2 ("Defendant agents and assigns have several contractual obligations by acquiescing and not rebutting any Affidavits sent from Pro se Plaintiff David Lamarr Love for an immediate and peaceful resolution of this matter."); *see also* doc. 19 (purported basis for the "contractual obligation"). However, though

Plaintiff notes that he seeks a settlement from the Defendant, he does not rebut the Defendant's arguments that his claim is barred. *See generally* doc. 22.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the factual allegations in a complaint are assumed true and construed in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v.*

4

*Pardus*, 551 U.S. 89, 94 (2007) (citations and quotations omitted). Nevertheless, *pro se* parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil Procedure. *Stubbs v. CitiMortgage*, Inc., 549 F. App'x 885, 887 (11th Cir. 2013); s*ee also Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citation omitted) (stating "[a]lthough we construe them liberally, *pro se* complaints also  must comply with the procedural rules that govern pleadings.").  In particular, the liberal construction "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Farkas v. SunTrust* Mortg., Inc., 447 F. App'x 972, 973 (11th Cir. 2011) (internal citations and quotations omitted).

## ANALYSIS

The Supreme Court first implied a private right of action for damages resulting from a deprivation of constitutional rights by federal officers in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Thus, actions brought directly under the Constitution against federal officials have become known as "*Bivens*" actions.  Although Plaintiff's pleadings suggest he is proceeding under 42

U.S.C. § 1983, *see* doc. 4 at 3, the Court construes Plaintiff's claims as *Bivens* claims because Section 1983 contemplates actions against state actors, while *Bivens* theoretically allows suit against federal officers such as Defendant Morales. *See* doc. 7 at 4. However, the application of *Bivens* to the facts presented by Plaintiff will remain theoretical.

In *Bivens* itself, the Supreme Court recognized an implied private right of action against federal agents who violate the Fourth Amendment. 403 U.S. at 389. The Supreme Court then extended *Bivens* to a gender discrimination claim under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and a deliberate indifference claim under the Eighth Amendment's Cruel and Unusual Punishment Clause, *Carlson v. Green*, 446 U.S. 14 (1980). However, it has not recognized a new implied damages remedy against federal officials in decades. *Id.* (providing the last set of novel circumstances in which the Court implied a Bivens action over 40 years ago); *Wilkie v. Robbins*, 551 U.S. 537, 568 (2007) ("Bivens is a relic of the heady days in which [the Supreme] Court assumed common-law powers to create causes of action.") (Thomas, J. concurring) (quoting *Corr. Servs Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J. concurring)). Since the 1980 *Carlson*

decision, the Supreme Court has made clear that further expansion of *Bivens* is "disfavored." *Ziglar v. Abbasi*, 582 U.S.---, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675). It has therefore "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* (quoting *Malesko*, 534 U.S. at 68).

Even still, the Court must determine whether Plaintiff's allegations state a *Bivens* claim in the present case. A two-step inquiry informs a court's analysis of a proposed *Bivens* claim against a federal official: first, the court determines if the case presents a new *Bivens* context, meaning whether "the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court." *Ziglar*, 137 S. Ct. at 1859; second, if the *Bivens* context is new, "a *Bivens* remedy would not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). Last year, in *Egbert v. Boule*, the Supreme Court warned against inquiring into "whether *Bivens* relief is appropriate in light of the balance of circumstances in the 'particular case,'" and it instructed courts not to "independently assess the costs and benefits of implying a cause of action," raising doubt as to whether the two-step inquiry is necessary.

--- U.S. ---, 142 S. Ct. 1793, 1805 (2022) (quoting *United States v. Stanley*, 483 U.S. 669, 683 (1987)).   Instead, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 142 S. Ct. at 1805 (quoting *Ziglar*, 137 S. Ct. at 1858.).   Under this approach, a" court must ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate."   *Id.* (internal citations, alterations, and quotations omitted)  Caselaw suggests that the answer is almost always yes.

Even though *Egbert* discouraged the use of the two-step inquiry at "too granular a level," it incorporated its rubric in its holding by noting the differences between the facts before it and those in *Bivens*.  *Egbert*, 142 S. Ct. at 1806.  Similarly, even though Plaintiff seeks redress under two constitutional amendments previously recognized by the Supreme Court as implied causes of action, the facts are meaningfully different, and factors certainly weigh against recognition of his claims.  By way of example, in *Hernandez v. Mesa*, a United States Border Patrol agent shot and killed a 15-year-old Mexican child in a cross-border shooting.  582

U.S. ---,140 S. Ct. 735 (2020).  The parents sued the agent under *Bivens*, claiming Fourth and Fifth Amendment violations.  *Id.* at 740.  The Supreme Court held that, although the claims involved amendments that had supported *Bivens* claims in the past, they arose in a new context given their international implications and the consequential foreign relations and national security concerns.  *Id.* at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").  The Court found that "special factors" counseled against extending *Bivens* to the excessive force claims brought by the parents of the child.  *Id.* at 749.

Much like the claim in *Hernandez*, Plaintiff's own Fourth Amendment claim is meaningfully different from the facts underlying *Bivens*.  *Ziglar*, 137 S. Ct. at 1860 ("Meaningful differences may include, e.g., the rank of the officers involved, the constitutional right at issue . . . the statutory or legal mandate under which the officer was operating . . . .").  In *Bivens*, federal agents allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations in his own home.  *Bivens*, 403 U.S. at 389.  During the incident, the agents

threatened to arrest Bivens' entire family, searched the apartment and took Bivens to the federal courthouse where he was interrogated, booked, and subjected to a visual strip search.  *Id.*  The search and seizure was allegedly initiated without probable cause.  *Id.*

In this case, Plaintiff alleges he was sequestered into a small courthouse meeting room where he was aggressively interrogated by a federal officer who accused Plaintiff of impersonating an American Indian, mail fraud, and defrauding the United States.  Doc. 5 at 6.  The officer confiscated Plaintiff's identification card for further investigation but returned it later.  *Id.*  The differences between this case and *Bivens* demand that the Court find the Fourth Amendment context is novel.

Likewise, though not a completely novel *Bivens* claim, Plaintiff's Fifth Amendment claims arise in a new context from those previously recognized.  In *Davis*, *Bivens* was expanded to apply to Fifth Amendment due process gender discrimination claims.  *Davis*, 442 U.S. 228. Even though Plaintiff does not fully explain how his Fifth Amendment rights were allegedly violated,[1] there are no allegations of gender

---

[1] Plaintiff explains in his Response that "The Due Process Clause of the 14th Fourteenth Amendment is exactly like a similar provision in the 5th Amendment, which only restricts the Federal Government.  It states that no person shall be deprived of Life, Liberty, or Property without Due Process of Law.  Usually, Due

discrimination contained within his complaint. Plaintiff's Fifth Amendment claims, vague though they may be, arise in a new context, too.

Similarly, while Plaintiff made no explicit factual allegations supporting Sixth and Fourteenth Amendment violations, the Court infers that Plaintiff seeks redress regarding his brief conversation with Morales without his attorney, who had, according to Plaintiff, left the room on his own accord. Doc. 4 at 6 ("Brown stated to Love that DHS has some serious accusations against you and that he was only there for a disability hearing not this madness."). These allegations arise under constitutional amendments for which the Supreme Court has never recognized a *Bivens* action. *Montalban v. Samuels*, 2022 WL 4362800, at *4 (11th Cir. Sept. 21, 2022) ("The Supreme Court has not recognized a Bivens cause of action for claims arising under the First, Sixth, and Fourteenth Amendments.") (citing *Ziglar*, 137 S. Ct. at 1855.).

Moreover, Defendant compellingly presents the factors which weigh against recognizing claims against federal officials in this context.

---

Process refers to Fair Procedures Defendant or Defendant's employee demonstrated no equity or fairness to Plaintiff David Lamarr Love." *See* doc. 22 at 1-2

*See* doc. 20 at 9 ("Recognizing this sort of claim . . . would chill the ability of law enforcement officers to investigate crime."); *Hernandez*, 140 S.Ct. at 744 ("Because petitioners assert claims that arise in a new context, we must proceed to the next step and ask whether there are factors that counsel hesitation."); *but see Egbert* 142 S. Ct. at 1803 ("While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.").  As the Supreme Court in *Egbert* instructed, recognizing a new cause of action under *Bivens* creates an uncertainty for which "a court likely cannot predict the 'systemwide' consequences", and that uncertainty alone is a "special factor" that forecloses relief.  142 S. Ct. at 1803-04.  Congress is better suited to answer whether a damages claim should be allowed to proceed in this context.  *Egbert*, 142 S. Ct, 1793 at 1805.

Finally, "[s]o long as the plaintiff had an avenue for some redress," a court may find reason to decline to provide a new *Bivens* remedy. *Malesko*, 534 U.S. at 69.  Here, Plaintiff may seek at least two "alternative remedial structures" already existing on all of his claims, and "that alone . . . is reason enough to limit the power of the Judiciary

to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (quotation marks omitted) (emphasis added); *see also Ziglar*, 137 S. Ct. at 1863 (2017) ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not.").

Indeed, the Federal Tort Claims Act ("FTCA") provides an alternative remedial structure and permits plaintiffs to allege intentional torts against U.S. law enforcement officers.  The FTCA waives the sovereign immunity of the United States and permits the recovery of money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government" while acting within the line and scope of the employee's office or employment, and "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *see also, e.g., Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475–76 (1994) (citing § 1346 (b) and observing that the FTCA "waived the sovereign immunity of the United States for certain torts committed by federal employees."). While the FTCA contains administrative prerequisites for submitting a claim prior to instituting suit, Plaintiff's possible failure to adhere to

those prerequisites does not mandate the expansion of *Bivens*. *See* 28 U.S.C. §§ 2672, 2675. Furthermore, while the FTCA remedy does not afford the same scope of damages as a *Bivens* action based directly on the Constitution, it remains an effective and possibly available remedy.

Even if an alternative judicial remedy were absent, there may be a non-judicial "alternative, existing process" where Plaintiff may seek relief. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807. Defendant argues that Plaintiff could have filed a complaint with DHS's Office of Inspector General ("OIG") as an alternative remedy. Doc. 20 at 8 (citing *Lovell v. Parker*, 2022 WL 3045039, at *9 (E.D.N.Y. Aug. 3, 2022.)). Congress has authorized inspectors general to investigate and report civil rights abuses by federal law-enforcement officers. *See* Doc. 20 at 8 (citing 5 U.S.C. APP. 3 § 8I(f)(2)(B)). Even though the Court finds no binding precedent supporting Defendant's allegation that the DHS OIG investigative process represents a sufficient alternative remedy, persuasive holdings outside the Eleventh Circuit suggest that such a

remedy would suffice.  *See, e.g.*, *Vanderklok v. United States*, 868 F.3d 189, 204 (3d Cir. 2017) (citing *Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012) (quoting *Wilkie*, 551 U.S. at 550); *see also Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) ("The existence of an 'alternative, existing process' to resolve an issue, whether judicial or non-judicial, 'constitutes a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'") (quoting *Minneci*, 565 U.S. at 125-26 (2012)).  Moreover, it appears that a similar grievance process foreclosed the plaintiff's claim in *Egbert*, albeit complaints went through the Border Patrol's "Administrative Remedy Program," as opposed to the DHS OIG procedure suggested here.  *See Egbert*, 142 S. Ct. at 1806 (citing 8 U.S.C. § 1103(a)(2) and finding the remedy program sufficient even though plaintiff was not entitled to participate and had no right to judicial review.).  Likewise, where Plaintiff can pursue a complaint using the DHS OIG procedure, *Bivens* expansion is likely unwarranted.

For all the foregoing reasons, the Court should not allow Plaintiff's *Bivens* suit to proceed against Defendant Morales.[2]  Morales' Motion to

---

[2] To the extent argued by Plaintiff, his allegations of criminal acts are meritless.

Dismiss should be **GRANTED**.  Doc. 20.  That does not end the Court's inquiry, however, because Plaintiff also sued Doe, the security guard who checked his identification when Plaintiff entered the courthouse.  *See* doc. 4 at 2.  Even though Plaintiff could not initially name the security guard, the screening order allowed Plaintiff to "use the tools of civil discovery to obtain the identity of Defendant Doe and to provide that information to the Court."  Doc. 7 at 1-2.  He was warned that his failure to serve Defendant Doe in a timely manner would result in dismissal of his claims against Defendant Doe.  *Id.* at 5.  That order was issued on April 29, 2022, but the docket does not indicate that "John Doe" has ever been named, identified, or served.

Rule 4(m) requires a plaintiff to properly serve the defendant within 90 days of the plaintiff filing the complaint  Fed. R. Civ. P. 4(m).  If the plaintiff fails to properly serve the defendant within 90 days, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice or direct that service be effected within a specified time; provided that if the plaintiff shows good

---

*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

cause for the failure, the court shall extend the time for service for an appropriate period." *Id.* Good cause exists "only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Prisco v. Frank,* 929 F.2d 603, 604 (11th Cir. 1991) (discussing "good cause" under the former Rule 4(j)), *superseded in part by rule as stated in Horenkamp v. Van Winkle & Co.,* 402 F.3d 1129, 1133 (11th Cir. 2005). Plaintiff has not served or sought to identify John Doe, and he presents no argument or explanation to support good cause for his failure to do so. Furthermore, there are no circumstances warranting an extension of time based upon the facts of the case alone. *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007).

Additionally, Plaintiff was warned almost a year ago that his failure to identify Defendant Doe may result in dismissal and was directed to use available tools to identify him. *See* doc. 7. He has not complied with that direction. That failure to comply with the Court's prior order is another sufficient reason his claims against the unknown security guard should be dismissed. *See* S.D. Ga. L.R. 41.1(b); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (courts have the

inherent authority to dismiss claims for lack of prosecution); *Mingo v. Sugar Cane Growers Co-op*, 864 F.2d 101, 102 (11th Cir. 1989) ("The district court possesses the inherent power to police its docket."); *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983); *see also* Fed. R. Civ. P. 41(b) (authorizing dismissal where a plaintiff has failed to comply with a court order).  Accordingly, Plaintiff's claims against John Doe should be dismissed without prejudice.

## CONCLUSION

For all the foregoing reasons, it is **RECOMMENDED** that Defendant Michael Morales' Motion to Dismiss be **GRANTED**, doc. 20, that Defendant John Doe be dismissed pursuant to Federal Rules of Civil Procedure 4(m) and 41(b), and that Plaintiff's action be **DISMISSED** in its entirety.   Given the Recommendation of Dismissal, the Court **DENIES** as moot Defendant's Motion to Stay.  Doc. 21.  This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's

Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED,** this 21st day of February, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA